UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

INEZ HUNTER,                                    CIVIL NO. 08-4980 (PJS/JSM)

       Plaintiff,

v.                                              <u>REPORT AND RECOMMENDATION</u>

FORD MOTOR COMPANY,
CHRYSLER, LLC,
CITI FINANCIAL AUTO,
HASTINGS AUTOMOTIVE INC.,
DION CARPENTER,
DOUG ERICKSEN, and
JOHN DOES,

       Defendants.

The above matter came on before the undersigned upon Defendant Chrysler, LLC's Motion to Dismiss [Docket No. 15]; Defendant Ford Motor Company's Motion to Dismiss and for a More Definite Statement [Docket No. 16]; Plaintiff's Motion for Default of Judgment (against defendants Hastings Automotive Inc, Dion Carpenter and Doug Ericksen) [Docket No. 22]; Plaintiff's Motion for Default of Judgment Against Ford and Chrysler and More Definite Statement [Docket No. 38]; and plaintiff's Motion for Default Judgment against CITI Financial Auto [Docket No. 63].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.     BACKGROUND

Plaintiff Inez Hunter ("Hunter") alleged the following in her Complaint:

This is a civil rights suit against defendants Hastings Automotive Inc. ("HAI"), Dion Carpenter ("Carpenter"), sales manager for HAI, Doug Ericksen ("Ericksen"),

owner of HAI, Ford Motor Company ("Ford"), Chrysler LLC. ("Chrysler"), and CITI Financial Auto ("CFA").  See Complaint, ¶¶ 1, 7, 9, 11, 12-14 [Docket No. 1].  The gravamen of the Complaint is that defendants discriminated against Hunter based on race, gender, age and disability by refusing to allow her to purchase a new Ford or Chrysler automobile under the Ford and Chrysler Employee Discount Z plans, and by secretly marking up the finance rates and charging her more for the purchase of her car than that which is charged white consumers.  Id. ¶¶ 1, 2.

At various points in the Complaint, Hunter asserted that Carpenter and Ericksen were employed by HAI, Ford, Chrysler, and CFA.  See e.g., Complaint, ¶¶ 2, 50, 51, 60, 66 - 68.[1]

According to Hunter, defendants Ford, Chrysler and CFA provide financing and Employee Discount Z plans for automobile purchases, and HAI provides financing and Employee Discount Z plans on behalf of Ford, Chrysler and CFA for automobile purchases.  Complaint, ¶¶ 7, 9, 11 – 14.  Ford,[2] HAI and CFA are the largest automotive finance companies in the world, and act as lenders for vehicle financing transactions.  Id., ¶¶ 18, 30.  Ford and CFA solicit persons to apply for financing with Ford and CFA.  Id., ¶ 18.  HAI, Ford and CFA authorize dealers who have signed contracts with Ford and CFA to accept applications on behalf of Ford and CFA, to quote rates, terms and

---

[1]     In many paragraphs, Hunter also alleged that "John Does I through X" were employed at HAI, Ford, Chrysler and CFA.  See e.g., Complaint, ¶¶ 50, 51, 60, 66, 68. At one point in the Complaint, Hunter stated that "The Defendant I through X are Executive Officers at Ford, Chrysler, CFA and HAI that are not known at this time;" at another point in the Complaint, Hunter stated that "John Does I through X" are insurance companies for Carpenter.  See Complaint, ¶¶ 16, 76.

[2]     Hunter sued Ford Motor Company and throughout the Complaint referred to this defendant as "Ford."  See Complaint, caption; ¶ 7.  However, from time-to-time, Hunter also referenced "Ford Motor Company Credit" and "Ford Credit."  Id., ¶¶ 18, 19.

financing options on behalf of Ford and CFA, and to originate finance transactions using Ford Credit and CFA forms.  Id., ¶ 20.  Ford and CFA provide the capital to finance automobiles, and provide the dealer with the credit applications, retail installment contracts and other financial forms, and instructions on how to fill out the various forms to accomplish the financing transactions.  Id., ¶ 21.  Consumers apply to Ford, HAI, and CFA to obtain financing, and Ford, HAI and CFA determine the financing rate, which is based on both objective and subjective criteria.  Id., ¶¶ 22-26.  The dealers are agents of Ford for the purpose of setting credit price.  Id., ¶ 31.

On or about September 21, 2007, Hunter received a flier in the mail from defendant HAI, advertising an offer to trade in her vehicle for the price of $2,500.  See Complaint, ¶¶ 46, 50.  On September 28, 2007, Hunter went to HAI to buy a car with two Employee Discount Z Plan ("Z Plan") numbers from Ford and Chrysler.  Id., ¶¶ 47-48.  The Z Plan, as it pertained to Ford, allowed employees and their family members to obtain savings on new Ford vehicles.  Id., ¶ 49.  In addition, Hunter claimed that she was an approved "credit customer" of Ford, HAI and CFA, which entitled her to financing without having to go through the normal application process.  Id., ¶ 58.  Hunter asserted that Carpenter, a sales manager for HAI, engaged in a variety of illegal activities and communications on behalf of Ford, Chrysler, HAI and CFA.  Specifically, Hunter alleged that Carpenter and Ericksen refused to sell, lease or show her any Z Plan figures for a new car under the Ford and Chrysler plans despite her request (in fact, Carpenter refused to even look at the Z Plan numbers Hunter provided for Ford and Chrysler vehicles); and Carpenter made false and misleading statements to her, including that they would accept her car for $2,500, Hunter could not afford a new car,

the interest rate of 22.25% was "the best they could get" for the used car she was going to buy, and after six months, Hunter could refinance the car and get a substantially lower interest rate.  Id., ¶¶ 47-48, 50, 60, 62, 66.   Based on this conduct, Hunter purchased a 2003 Ford Taurus, without the benefit of a Z Plan.  Id., ¶¶ 52, 58.   In order to buy the car, Hunter alleged that she signed a Ford, HAI, CFA retail/used installment contract with an APR of 22.25% with an additional 5% for penalties and late fees.  Id. Hunter still pays this high interest rate despite being promised by defendants that she would receive a lower interest rate after six months.  Id., ¶¶ 66, 68, 121.  The total sales price, including interest, of the vehicle was $22,136.56 for the 2003 Taurus, while a new discontinued Ford Taurus cost approximately $ 22,635 (prior to any discounts).  Id. ¶ 52.

The sales contract attached to the Complaint has the stamp of HAI on it and provides that the lienholder is CFA.  See Complaint, Ex. 8.  Similarly, the application for the title and registration of the vehicle listed the assignee of the vehicle as HAI and the First Secured Party as CFA.  Id., Ex. 10.  The Retail Installment Contract and Security Agreement for the vehicle listed Hunter as the purchaser of the vehicle and HAI as the seller.  Id., Exs. 6, 7.

Hunter alleged that within 30 days of the purchase of her vehicle, her son contacted Ericksen at HAI to request return of the vehicle because it had many problems and because Hunter was being charged the drastically inflated interest rate of 22.25%.  See Complaint, ¶ 69.   Hunter's son also complained that Hunter had purchased an older vehicle for the same price as a new vehicle.  Id. Ericksen refused to take the vehicle back, stating that the deal was fair; he also stated that he would draft

fake documents to show that Hunter was shown the price figures of vehicles available under the Z Plans.  Id.  Hunter's son contacted Ericksen again on February 12, 2008, at which time Ericksen allegedly stated that Hunter was not shown the numbers for a new Ford Taurus because the model was discontinued and because his dealership did not have any in stock.  Id., ¶ 69.  Hunter claimed that Ericksen knew or should have known under the Z Plan, that he could have acquired a Ford Taurus from a neighborhood dealership and that there was at least one Ford Taurus available at another dealership within 25 days of the purchase of her vehicle.  Id.

Based on these set of facts, Hunter has asserted the following causes of action: (1) Race, Gender and Disability Discrimination in Violation of Equal Credit Opportunity Act 15 U.S.C. 1691, et seq.; (2) Americans With Disability Act – 42 U.S.C. § 12182 et seq. and the Vulnerable Adult Act; (3) Civil Rights Act: Racial Discrimination 42 U.S.C. § 1981, § 1982, et seq. and Human Rights Act Chapter 363a et seq.; (4) Uniform Deceptive Trade Practice Act 325D.43 to 325D.48, Minn. Stat. § 325D.68 to 325D.69 et seq., 325F.69, 325F.71; False Statements in Advertising Act, 325F.67 to 325F.70, and 325D.09—Unlawful Trade Practices; Consumer Protection Act, Breach of Implied Covenant of Good Faith and Fair Dealing; (5) Unlawful business practices under Business and Professions Code Sect. § 17200, § 17208, Consumer Fraud Act, Human Rights Act 363A.01, 363A.02, 363A.04, 363A.20, 363A.12, 363A.16; and (6) Truth in Lending Act, 15 U.S.C. § 1601, et seq.

The Complaint was filed on August 21, 2008.  See Docket No. 1.  The Summons for the Complaint was issued on August 29, 2008.  Ford was served with the Summons and Complaint on September 17, 2008; Chrysler was served with the Summons and

Complaint on September 16, 2008; CFA was served with the Summons and Complaint on September 15, 2008; Carpenter was served with the Summons and Complaint on September 15, 2008; and Ericksen was served with the Complaint on September 16, 2008.[3]  See Docket No. 25.

HAI, Carpenter and Ericksen filed their Answers to the Complaint on October 3, 2008.  See Docket Nos. 13, 14.  On October 6, 2008, Chrysler, in lieu of answering the Complaint, brought a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Docket No.15.  Likewise, Ford brought a 12(b)(6) motion to dismiss and for a more definite statement on October 7, 2008.  See Docket No. 16.  CFA asked for, and received from the Court, an extension of time to file its answer until December 15, 2008.  See Docket Nos. 19, 35.  CFA ultimately served and filed its Answer on December 15, 2008.  See Docket Nos. 60, 61.

Now before this Court are motions to dismiss by Ford and Chrysler and Hunter's motions for default judgment against all defendants.

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(6) Motion to Dismiss

A civil complaint will be dismissed upon motion by a defendant, if the plaintiff has failed to plead an actionable claim for relief against that defendant.  Fed. R. Civ. P. 12(b)(6).  To state an actionable claim for relief, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendants under some established legal theory.

---

[3]    There is no evidence in the record as to whether HAI, separate from Carpenter and Ericksen, was served with the Summons and Complaint.

> At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief. Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); Fed.R.Civ.P. 8(a)(2). The plaintiffs need not provide specific facts in support of their allegations, Erickson v. Pardus, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), but they must include sufficient factual information to provide the "grounds" on which the claim rests, and to raise a right to relief above a speculative level. Twombly, 127 S.Ct. at 1964-65 & n. 3. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) ("the complaint must allege facts, which if true, state a claim as a matter of law").

Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). Thus, to avoid dismissal, a complaint must include "enough facts to state a claim for relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). However, "[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss. But this does not mean that only the complaint itself may be reviewed.

> "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The court, however, "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).

Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008).  Therefore, documents attached to the complaint may be reviewed on a motion to dismiss, since they are part of the pleading,[4] as well as documents that are part of a public record.

### B.   Motions for Default Judgment

The Federal Rules of Civil Procedure provide that default or default judgment may be entered against a party who "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  A motion for default judgment must be preceded by an entry of default. See Fed. R. Civ. P. 55(a) and (b).  "The entry of default judgment is not favored by the law . . . and should be a rare judicial act."  In re Jones Truck Lines, Inc., 63 F.3d 685, 688 (8th Cir. 1995) (citation and quotations omitted).

## III.   DEFENDANTS' MOTIONS TO DIMISS

### A.   First Cause of Action: Race, Gender and Disability Discrimination in Violation of Equal Credit Opportunity Act 15 U.S.C. 1691, et seq.

As it relates to her First Cause of Action, Hunter alleged that Ericksen and Carpenter were both employed by HAI, Ford and CFA, and that Ericksen authorized the actions of Carpenter in furtherance of the policies and practices alleged in the cause of action.  Complaint, ¶¶ 83, 86 - 88, 90.  Hunter further alleged that pursuant to Equal Credit Opportunity Act ("ECOA"), HAI, Ford and CFA acted as creditors, in that they participated in determining whether or not to extend Hunter credit, and that the Act

---

[4]      Rule 10(c) of the Federal Rules of Civil Procedure provides:  "**(c) Adoption by Reference; Exhibits.** . . . A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."

applied to HAI, Ford and CFA and her, as an applicant for a car loan.  Id., ¶¶ 83-84.

Hunter then alleged that she was systematically and arbitrarily extended car loan credit

by defendants on a discriminatory basis when Ericksen authorized Carpenter to engage

in a "Mark-up Policy" that had a disparate impact on her as a vulnerable African

American compared to other similarly-situated Caucasians, resulting in her being

charged with more finance charges and a higher interest rate than similarly situated

Caucasians.  Id., ¶¶ 84, 86, 88-89.

The First Cause of Action makes no mention of Chrysler.  Given that Hunter has

not alleged any facts or allegations regarding Chrysler to support a claim under the

ECOA against Chrysler, its motion to dismiss this claim should be granted.

As for Ford, it argued that the credit transaction at issue was the loan Hunter

obtained to purchase the vehicle from HAI, as supported by Exhibits 6-11 attached to

her Complaint.  See Memorandum of Law in Support of Ford Motor Company's Motion

to Dismiss and for a More Definite Statement ("Ford Mem.") at p. 4.  Ford contended

that Hunter's claim failed as to it because it did not offer or extend credit to her.  Id.

The Equal Credit Opportunity Act ("ECOA") prohibits discrimination by a "creditor

against any applicant for credit on the basis of race, color, religion, national origin, sex

or marital status, or age.  See 15 U.S.C. § 1691(a)(1).  ECOA defines a "creditor" as

"any person who regularly extends, renews, or continues credit; any person who

regularly arranges for the extension, renewal, or continuation of credit; or any assignee

of an original creditor who participates in the decision to extend, renew, or continue

credit." 15 U.S.C. § 1691a(e).  The regulations underlying the Act provide in relevant

part:

> Creditor means a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit. The term creditor includes a creditor's assignee, transferee, or subrogee who so participates. For purposes of § 202.4(a) and (b), <u>the term creditor also includes a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made.</u> A person is not a creditor regarding any violation of the Act or this regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction.

12 C.F.R § 202.2(l) (emphasis added).

Hunter's complaint is that defendants discriminated against her on the basis of race and disability in the terms of the loan contract she was extended, including the higher interest rate she was charged.  <u>See</u> Complaint, ¶¶ 84, 88, 89.  It is true that the documents attached to the Complaint (Exs. 6-11 – the Sales Contract, the title and registration of the vehicle and the Retail Installment Contract and Security Agreement for the vehicle) make no mention of Ford's involvement in the credit extended to Hunter. In this regard, the documents only list HAI as the seller of the vehicle, and CFA, as the lien holder and first secured party as CFA.   However, the Complaint is replete with allegations that Carpenter and Ericksen were employed by Ford, and that Ford was tied to and behind the credit transaction at issue.  <u>See</u> <u>e.g.</u>, Complaint, ¶¶ 2, 12, 13, 20 – 26, 31, 32, 50 - 52, 60, 62, 66 - 68, 83, 86 - 88, 90, 92.  In fact, the entire thrust of Hunter's suit is that all of the other defendants, except Chrysler, were acting at the direction of and on behalf of Ford.  Whether indeed these facts will ultimately be proven at trial is not for this Court to resolve on a motion to dismiss.  Instead, at this stage of the suit, the Court must accept the facts alleged by Hunter as true.   Hunter has alleged sufficient

facts to support her claim against Ford under ECOA.  Therefore, the Court recommends that Ford's Motion to Dismiss Hunter's First Cause of Action under the ECOA be denied.

**B.** **Second Cause of Action: Americans With Disability Act ("ADA") – 42 U.S.C. § 12182 et seq. and the Vulnerable Adult Act**

Hunter asserted that defendants violated Title III of the ADA because they discriminated against her on the basis of her disability (dislocated knee caps, and degenerative disk damage) when they denied her the benefits of the Ford and Chrysler Z Plans, misrepresented the terms of financing she received for her Ford Taurus in order to trap her into a 22.25% interest rate loan, and concealed the availability of new Ford Taurus vehicles at other dealerships.  See Complaint, ¶ 96.

Both Chrysler and Ford argued that Hunter's ADA claim must be dismissed as she has failed to allege that they owned, operated or leased HAI as the public accommodation at issue.  See Defendant Chrysler, LLC's Memorandum in Support of its Motion to Dismiss ("Chrysler Mem.") at p. 6; Ford Mem. at p. 5.  This Court agrees.

Title III of the ADA prohibits discrimination of disabled individuals and other individuals in the provision of goods or services by any person who owns or operates a "place of public accommodation." 42 U.S.C. § 12182(a), (b)(1)(A)(iii).  Hunter asserted in her Complaint that she went to HAI to purchase a vehicle and did so on September 28, 2007.  See Complaint, ¶¶ 47-52.  Hunter further alleged that defendant Ericksen is the "Owner" of HAI.  Id., ¶ ¶ 1, 13.  Hunter did not allege that either Ford or Chrysler operated or owned HAI.  Given that Hunter has stated in her Complaint that the "place of public accommodation," HAI, was owned by Ericksen, the motions to dismiss Hunter's ADA claim by Ford and Chrysler under the Second Cause of Action should be

granted and the claims dismissed with prejudice.   See generally, Pona v. Cecil Whittaker's, Inc., 155 F.3d 1034, 1036 (8th Cir. 1998) ("[The Plaintiff's] Title III claim against the St. Louis police officers . . . is even more obviously infirm, because there is not a colorable claim that the officers owned, leased, or operated the [place of public accommodation] in question. The claim therefore necessarily fails on its face.").

As to Hunter's Vulnerable Adult Act, Hunter has not provided any citation regarding the Act, and the Court's search of federal statues and case law did not turn up any federal statute by this name.   The one statutory scheme the Court could locate—the Minnesota Vulnerable Adults Act, Minn. Stat. §§ 626.557 and 626.5572—only pertains to the reporting of maltreatment of vulnerable adults in a resident or inpatient of a facility.   It has no application to the facts alleged in Hunter's Second Cause Action.   For these reasons, Ford and Chrysler's Motion to Dismiss Hunter's Vulnerable Adult Act claim should be granted and the claims dismissed with prejudice.

**C.**     **Third Cause of Action: Civil Rights Act: Racial Discrimination 42 U.S.C. § 1981, § 1982, et seq. and Human Rights Act Chapter 363a et seq.**

Hunter's allegations pertaining to her Third Cause of Action under 42 U.S.C. § 1981, § 1982 and the Minnesota Human Rights Act ("MHRA") included the following:

- Defendants violated § 1981 by intentionally discriminating against Hunter on the basis of race when they interfered with and denied her the benefits of the Z Plan Program.  See Complaint, ¶ 100.

- Defendants interfered with her contractual rights in the Z Plan by refusing to allow her to return or exchange the Taurus once they became aware that they had concealed their Ford Taurus inventory so that she would have to pay the price of a new 2008 Ford Taurus for a 2003 Taurus.  Id.

- Defendants' proffered reasons for not having a Ford Taurus in stock was merely a pretext for discriminating against her and denying her a new car under the Z Plan. Id.

- Ericksen authorized Carpenter at CFA, Ford, HAI and Chrysler to intentionally discriminate against her by denying her the benefits of the Z Plan and by charging her a higher interest rate than those charged to similarly-situated Caucasians.  Id., ¶ 103.

- Ericksen authorized Carpenter at CFA, Ford, HAI and Chrysler to discriminate against her with respect to the car loan and Z Plan benefits, in that Hunter did not have the same rights as Caucasians to purchase and obtain a loan underwritten by Ericksen, Carpenter, CFA, Ford and HAI, as did Caucasians.  Id., ¶ 105.

- Defendants Ericksen and Carpenter at CFA, Ford and HAI, deprived Hunter of the opportunity to take out a loan at more favorable terms and deprived her of discounts under the Z Plan based on her race, which resulted in her obtaining an old Taurus for approximately the same price as a new Taurus.  Id., ¶ 106.

- Defendants discriminated against her on the basis of race when they used deceptive trade practices to preclude her from using the Z Plan to acquire a Ford Taurus from neighboring dealerships and when they charged her a higher interest rate than those afforded to similarly-situated Caucasians.  Id., ¶ 107.

- Defendants discriminated against Hunter on the basis of her race, gender and age as compared to similarly-situated whites in the formation of contracts, and in depriving her of all benefits under the Z Plan program.  Id.

- CFA knew, or should have known, that HAI was engaging in the prohibited practice of discriminatory lending on the basis of race.  Id.

- Defendants knew, or should have known, that they placed Hunter in a defective vehicle in violation of 42 U.S.C. §§ 1981 and 1982, Minnesota Statutes §§ 168 and 169 et seq., 169.67, 169.781, 325.F56, 325.4 and Truth in Repairs Act.  Id.

- Defendants Ericksen, Carpenter, CFA, Ford and HAI have not taken any corrective action to stop the racial discriminatory practices embedded into the car loan taken out by Hunter and underwritten by these parties.  Id., ¶ 111.

Ford argued that Hunter's §§ 1981 and 1982 claims against it fail because the documents relied on by plaintiff in her Complaint show that Ford played no role in the purchasing or financing of her 2003 Ford Taurus.  See Ford Mem. at p. 6.  Further, Ford

contended that it could not have violated the Minnesota Human Rights Act because it was HAI and CFA, and not it, that participated in the subject transaction.  Id.  Chrysler maintained that because Hunter's Complaint only referenced contracts having nothing to do with Chrysler, Hunter's Third Cause of Action against it failed to state a claim for relief.  See Chrysler Mem. at p. 8.

Section 1981 provides for equal rights under the law and states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981(a). The statute currently defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights.  Such a contractual relationship need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts."  Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).  This includes subjecting "defendants to liability under § 1981 when, for racially motivated reasons, they prevented individuals who 'sought to enter into contractual relationships' from doing so. . . ."  Id. (quoting Runyon v. McCrary, 427 U.S. 160, 172 (1976)).  The Supreme Court further found that "[w]e have never retreated from what should be obvious from reading the text of the statute:

Section 1981 offers relief when racial discrimination <u>blocks the creation of a contractual relationship</u>, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." <u>Id.</u> (emphasis added).

Section 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The elements of a § 1982 claim are (1) membership in a protected class; (2) discriminatory intent on the part of the defendant; and (3) interference with the rights or benefits connected with the ownership of property. <u>Daniels v. Dillard's, Inc.</u>, 373 F.3d 885, 887 (8th Cir. 2004) (citation omitted).

Section 1981 and 1982 were designed primarily to place African Americans "on an equal footing with whites as far as legal rights and privileges are concerned. And it is now settled that they protect blacks and members of other minority groups from discrimination on account of race, color, religion or national origin, including, in general, discrimination by private entities or persons." <u>Harris v. Norfolk & W. Ry. Co.</u>, 616 F.2d 377, 378 (8th Cir. 1980) (citations omitted).

Hunter alleged in the Third Cause of Action that defendants violated "Human Rights Act Chapter 363a et seq." She did not indicate which section under the MHRA she was claiming defendants had violated. However, based on her reliance on 42 U.S.C. §§ 1981 and 1982, the Court assumes that she was referencing Minn. Stat. § 363A.17(c), which provides:

> It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service . . . to

> intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's race [or] national origin, . . . unless the alleged refusal or discrimination is because of a legitimate business purpose.

(emphasis added).

Ford and Chrysler argued that Hunter's § 1981 and MHRA claims should be dismissed because she did not reference any contract between her and them. Their arguments fail for several reasons. First, as discussed with respect to the First Cause of Action, Hunter has repeatedly stated Ford's role in the ultimate loan she obtained from CFA, including that Ericksen and Carpenter were employed by Ford and were acting at the direction and under the control of Ford. Second, both Chrysler and Ford's argument failed to address Hunter's allegations that they unlawfully prevented her from entering into a different contract (i.e., a contract to buy a new car under the Z Plan) on the basis of race. See Complaint, ¶ 100. Accepting all of these factual allegations as true, as this Court must do on a motion to dismiss, Ford and Chrysler's motions to dismiss as they relate to Hunter's § 1981 and Minn. Stat. § 363A.17(c) claims should be denied.

With respect to her claims under § 1982, Hunter alleged that a private loan is a property interest within the meaning of § 1982. See Complaint, ¶ 104 ("The private loan is a persona property within the meaning of 42 USC § 1982"). Hunter claimed that defendants discriminated against her on the basis of race not only with respect to the terms of the terms of the loan contract she was ultimately extended, but also, based on the conduct of Ericksen and Carpenter, with respect to their refusal to extend her a loan and the right to buy a new car under the Z Plans offered by both Ford and Chrysler.

Complaint, ¶¶ 103, 105-106.  Based on the facts alleged in the Complaint, Hunter has satisfied the elements required to make out a § 1982 claim.  Accordingly, Ford and Chrysler's Motion to Dismiss as it relates to Hunter's § 1982 claim should be denied.

In sum, the Complaint, as worded, states a cause of action of race discrimination against both Chrysler and Ford under 42 U.S.C. §§ 1981 and 1982, and Minn. Stat. § 363A.17(c).

> **D.    Fourth Cause of Action: Uniform Deceptive Trade Practice Act 325D.43 to 325D.48, Minn. Stat. § 325D.68 to 325D.69 et seq., 325F.69, 325F.71; False Statements in Advertising Act, 325F.67 to 325F.70, and 325D.09—Unlawful Trade Practices; Breach of Implied Covenant of Good Faith and Fair Dealing**

Hunter realleged and incorporated every allegation of all of the prior paragraphs of her Complaint.  See Complaint, ¶ 115.  Hunter then asserted that defendants had engaged in deceptive trade practices by misleading her into believing that she was buying merchandise at prices substantially lower than regular blue book or retail prices, when she was not; misleading her as to the quality of the merchandise purchased; and depriving her of various customer services.  Id.  According to Hunter, these actions "constitute[ ] unfair and fraudulent competition" in violation of the Minnesota Uniform Deceptive Trade Practice Act 325D.43 to 325D.48, Minn. Stat. § 325D.68 to 325D.69 et seq., 325F.69, 325F.71; False Statements in Advertising Act, 325F.67 to 325F.70, and 325D.09—Unlawful Trade Practices (dealing with mislead consumers); the Consumer Protection Act, Minn. Stat. § 325F.67 (dealing with false statements in advertisement).  Id.  Hunter asserted that these actions also violated the implied covenant of good faith and fair dealing.  Id.  In this regard, Hunter asserted that by entering into an agreement with defendants Carpenter, HAI, CFA and Ford, she trusted that these defendants

would deal with her fairly and not scheme to defraud her with a five-year contract at 22.25% interest, and that defendants knew that they had entered into an implied covenant to not deprive her of any programs and to not engage in any unlawful conducted towards her. <u>See</u> Complaint, ¶ 116. As relief for all of these claims, Hunter sought monetary damages. <u>See</u> Complaint, pp. 38-39.

Both Ford and Chrysler argued that the Fourth Cause of Action should be dismissed because Hunter failed to allege with specificity the false, deceptive or misleading conduct in which they engaged as required by Rule 9(b) of the Federal Rules of Civil Procedure. <u>See</u> Ford Mem. at p. 7; Chrysler Mem. at pp. 8-9.

Prior to examining the claims asserted in the Fourth Cause of Action to determine if Hunter has stated them with sufficient particularity, this Court has concluded that a number of the claims must be dismissed because either Hunter lacks standing to assert them or they do not state a viable claim for relief. <u>See</u> <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004) ("U.S. Bank challenged Davis's standing, and the district court concluded that Davis failed to meet the threshold requirement [under Minn. Stat. § 8.31] 'that her causes of action benefit the public.' Even if U.S. Bank had not raised the argument, it was appropriate for the district court to determine whether each claim is properly before it by asking "'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'") (quoting <u>Bennett v. Spear</u>, 520 U.S. 154, 163 (1997), quoting <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Camp</u>, 397 U.S. 150, 153 (1970)); <u>Smith v. Boyd</u>, 945 F.2d 1041, 1043 (8th Cir. 1991) ("'A district court has the power to sua sponte dismiss a complaint for failure to state a

claim.'") (quoting <u>Mildfelt v. Circuit Court</u>, 827 F.2d 343, 345 (8th Cir. 1987) (per curiam)); <u>Hanson v. Sullivan</u>, (NO. 3:91-706), 1992 WL 227610 at *3 (D. Minn. June 02, 1992) (dismissing sua sponte for failure to state a claim where it was obvious that the plaintiff could not prevail on the facts alleged).

First, this Court finds that Hunter's Minnesota Uniform Deceptive Trade Practice Act ("DTPA") claim under Minn. Stat. §§ 325D.43 to 325D.48 fails as a matter of law because she does not have standing to assert a claim under the DTPA.  The DTPA does not afford for a private cause of action for monetary damages and Hunter has not requested injunctive relief.  See <u>Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.</u>, 603 N.W.2d 336, 339-40 (Minn. Ct. App. 1999) (finding that the DTPA provides only injunctive relief and does not afford a private cause of action for monetary damages); <u>see also</u> <u>i-Systems, Inc. v. Softwares, Inc.</u>, Civ. No. 02-1951 (JRT/FLN), 2004 WL 742082 at *15 (D. Minn. March 29, 2004) (concluding that the DTPA "permits a plaintiff to seek injunctive relief, but not monetary damages.") (citation omitted).

As for Hunter's claims under Minn. Stat. §§ 325D.68 to 325D.69, these statutes deal with the monopolization of food products.  Food products are not at issue in this case, and thus, Hunter has failed to state a claim for relief under these statutes.

With regard to Hunter's claims under Minn. Stat. §§ 325F.68 to 325F.70, the Minnesota Consumer Fraud Act ("CFA") provides in relevant part:

> 325F.69. Unlawful practices
>
> Subdivision 1. Fraud, misrepresentation, deceptive practices. The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been

> misled, deceived, or damaged thereby, <u>is enjoinable as provided in section 325F.70</u>.

Minn. Stat. § 325F.69 (emphasis added).

Hunter's CFA claim fails for several reasons.  First, she has no standing to assert a claim under this statute because it does not provide for a private cause of action.  <u>See Berczyk v. Emerson Tool Co.</u>, 291 F. Supp.2d 1004, 1019 (D. Minn. 2003) ("Generally, the Consumer Fraud Act does not provide a private right of action to individual consumers. In limited circumstances, private remedies may be available to individuals, through the Private Attorney General Act, Minnesota Statutes Section 8.31."); <u>Tuttle v. Lorillard Tobacco Co.</u>, No. Civ. 99-1550 (PAM/JGL), 2003 WL 1571584 at *5 (D. Minn. 2003) (citing <u>Ly v. Nystrom</u>, 615 N.W.2d 302, 311 (Minn. 2000)) ("Neither the Consumer Fraud Act nor the False Advertising Act provides for a private right of action. Thus, an individual may bring claims under these statutes only through the Private Attorney General Statute.").  Second, Hunter did not bring her CFA claim through the Minnesota Private Attorney General Statute, Minn. Stat. § 8.31.  Third, even if Hunter had asserted a claim pursuant to the Private Attorney General Statute, her claim would still fail as "[t]he Minnesota Supreme Court has ruled that such private actions may be brought only if they benefit the public. Litigation over an alleged misrepresentation that was made only to one person 'does not advance state interests and enforcement has no public benefit.'"  <u>Davis</u>, 383 F.3d at 768 (quoting <u>Ly</u>, 615 N.W.2d at 314); <u>see also</u> <u>Ponzo v. Affordable Homes of Rochester, LLC</u>, No. A04-2234, 2005 WL 1804644 at *2 n. 1 (Minn. Ct. App. Aug. 02, 2005) ("[I]f a plaintiff complains about an individual experience with a seller and cannot produce evidence that the seller made misrepresentations to the public at large, a plaintiff is barred from raising claims under

the Consumer Fraud Act.").   Hunter's allegations that all defendants told her that she would be able to obtain a lower rate after six months (see Complaint, ¶ 121), and her allegations that defendants engaged in deceptive trade practices by misleading her into believing that she was buying merchandise at prices substantially lower than regular blue book or retail prices; misleading her as to the quality of the merchandise purchased; and withholding various customer services without "compensating advantage to plaintiff" (see Complaint, ¶ 115), have no benefit to the public.   Fourth, as stated previously, even if Hunter overcame all of these deficiencies, the only relief provided by Minn. Stat. § 325F.69 is injunctive relief; Hunter has not sought any injunctive relief in this case.   See Complaint at pp. 38-39.

Likewise, Hunter lacks standing to pursue a claim under the Minnesota False Statements in Advertising Act ("MFSAA"), Minn. Stat. § 325F.67.   "The MFSAA prohibits a corporation from disseminating any advertisement that 'contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading' in connection with the sale of merchandise or services."   Bykov v. Radisson Hotels Intern., Inc., Civ. No. 05-1280 (ADM/JSM), 2006 WL 752942 at *4 (D. Minn. March 22, 2006) (quoting Minn. Stat. § 325F.67).   However, like the CFA, claims under the MFSAA "are typically enforced by the state attorney general."   Id. (citing Minn. Stat. §§ 325F.67; 325F.70, subd. 1).   Given that Hunter did not bring her MFSAA claims through the Minnesota Private Attorney General Statute, and she could not pursue her claims via this statute, as the alleged misrepresentations were only made to her and her claim does not benefit the public, her MFSAA claim cannot proceed.

As to the remaining claims alleged by Hunter in the Fourth Cause of Action – claims under the Unlawful Trade Practices Act, Minn. Stat. § 325D.09, and the Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act, Minn. Stat. § 325F.71 – while Hunter does have standing to assert these claims,[5] the Court finds that they should be dismissed, as argued by Chrysler and Ford, because she failed to follow the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Pursuant to Rule 9(b), "the circumstances constituting fraud . . . shall be stated with particularity."   The Minnesota Uniform Deceptive Trade Practice Act, False Statements in Advertising Act, the Unlawful Trade Practices and the Consumer Protection Act (also known as the Consumer Fraud Act) all deal with protecting consumers from deceptive or fraudulent trade practices.   The pleading requirements of Rule 9(b) apply to Minnesota's consumer protection statutes where "the gravamen of the complaint is fraud."   Tuttle v. Lorillard, 118 F. Supp.2d 954, 963 (D. Minn. 2000) (citation omitted); see also ADT Sec. Services, Inc. v. Swenson, NO. CIV. 07-2983 (JRT/AJB), 2008 WL 2828867 at *6 (D. Minn. July 21, 2008) (same) (citations omitted); Drobnak v. Andersen Corp., NO. CIV 07-2249 (PAM/JSM), 2008 WL 80632 at *4 (D. Minn. Jan. 08, 2008) (same) (citations omitted).   Consequently, given that the gravamen

---

[5]      Hunter's Unlawful Trade Practices Act claim under Minn. Stat. § 325D.09 and Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act claim under Minn. Stat. § 325F.71 allow for a private cause of action for damages independent of Minn. Stat. § 8.31.   See Minn. Stat. § 325F.71, subd. 4; Tremco, Inc. v. Holman, No. C8-96-2139, 1997 WL 423575 at *6 (Minn. Ct. App. July 29, 1997) ("Minn. Stat. § 325D.15 (1996) grants standing to '[a]ny person damaged or who is threatened with loss, damage, or injury by reason of a violation of sections 325D.09 to 325D.16' to sue for damages and injunctive relief.).

of the consumer protection statutes asserted by Hunter was based in fraud, Hunter is required to plead these claims with particularity.

In order to meet the particularity requirements of Rule 9(b), a complaint "must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted).   Examined against these requirements, the Court agrees that Hunter failed to assert her fraud claims against Ford and Chrysler with the requisite particularity.

As already discussed, Hunter alleged that Carpenter acted at the direction and authority of Ericksen and that both were employed by Ford and Chrysler (in addition to HAI and CFA).   Hunter then laid out facts regarding various alleged misrepresentations made by Carpenter on or about September 28, 2007 (e.g., they could accept her car for $2,500 (Complaint, ¶ 50); the interest rate of 22.25% was "the best they could get" (id., ¶ 62), Hunter could not afford a new car (id.); and after six months Hunter could refinance the car and get a substantially lower interest rate (id., ¶ 66)).   But these purported statements by Carpenter are not the statements that support Hunter's Fourth Cause of Action.   In the Fourth Cause of Action, Hunter alleged that "Defendants" had mislead her into believing that she was buying merchandise at prices substantially lower than regular blue book or retail prices; had mislead her as to the quality of the merchandise purchased; and had deprived her of various customer services offered at regularly established retail and wholesale outlets.   Hunter did not set out the required "who, what and when" (i.e. who made such statements, the specific contents of the

alleged statements, and when they were made) so that Chrysler and Ford could properly respond to these allegations.  See United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003) (Rule 9(b) "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.") (citation omitted).   Stated otherwise, not knowing the contents of the allegedly actionable statements that were made to Hunter, much less who made them or when they were made, neither Ford nor Chrysler have any way to determine if they are responsible for or have any involvement in the statements.  Lacking the specificity required by Rule 9(b), Ford's and Chrysler's motions to dismiss Hunter's claims under the Unlawful Trade Practices Act, Minn. Stat. § 325D.09, and Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act, Minn. Stat. § 325F.71, should be granted and the claims dismissed without prejudice.[6]

Finally, Hunter's implied covenant of good faith and fair dealing claims against Ford and Chrysler also fails as a matter of law.  Under Minnesota law, "every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." Northstar Industries, Inc. v. Merrill Lynch & Co., 558 F. Supp.2d 944, 948 (D. Minn. 2008) (quoting In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995),

---

[6]     Even if this Court had concluded that Hunter had standing to make out claims under the Minnesota Uniform Deceptive Trade Practice Act, Consumer Fraud Act and False Statements in Advertising Act, the lack of particularity that is fatal to her claims under the Unlawful Trade Practices Act and the Deceptive Acts Perpetrated Against Senior Citizens or Disabled Persons Act would have applied with equal force to her claims under these other statutes.   Stated otherwise, had this Court found that she could purse her claims under Minnesota Uniform Deceptive Trade Practice Act, Consumer Fraud Act and False Statements in Advertising Act via the Minnesota Private Attorney General Statute, the Court would still have dismissed these claims as they had not been stated with sufficient particularity as required by Fed. R. Civ. P. 9(b).

quoting <u>Zobel & Dahl Constr. v. Crotty</u>, 356 N.W.2d 42, 45 (Minn. 1984)).  "The implied covenant 'does not extend to actions beyond the scope of the underlying contract.'" <u>Id.</u> In fact, "Minnesota does not recognize a claim for breach of the implied covenant of good faith and fair dealing separate from an underlying breach of contract claim." <u>Id.</u> (citing <u>Medtronic, Inc. v. ConvaCare, Inc.</u>, 17 F.3d 252, 256 (8th Cir. 1994)); <u>see also</u> <u>Midwest Theatres Corp. v. IMAX Corp.</u>, Civil No. 08-5823 (DSD/SRN), 2009 WL 649701 at *3 (D. Minn. March 11, 2009) ("CineMagic's complaint asserts claims for breach of contract and of the implied covenant of good faith and fair dealing. Both claims require that the alleged breaching party be a party to the underlying contract.") (citations omitted).

Here, Hunter has not alleged that either Ford or Chrysler are parties to any contract with her. Indeed, the documents attached to her Complaint show that the contracts at issue were between her, HAI and CFA.  Hunter's claim for breach of the implied covenant of good faith and fair dealing fails because there is no contract between her and Ford or Chrysler to which such a claim can attach.  Therefore, Ford and Chrysler's motion to dismiss Hunter's claim for breach of the implied covenant of good faith and fair dealing should be granted and this claim be dismissed with prejudice.

In summary, as to Hunter's Fourth Cause of Action, it should be dismissed with prejudice, except for those claims under Minn. Stat. § 325D.09, and Minn. Stat. § 325F.71, which should be dismissed without prejudice.

**E.**     **Fifth Cause of Action: Unlawful Business Practices Under Business and Professions Code Sect. § 17200, § 17208, Consumer Fraud Act, Human Rights Act 363A.01, 363A.02, 363A.04, 363A.10, 363A.12, 363A.16**

In the Fifth Cause of Action, Hunter alleged that defendants made dishonest or misleading promises with the intent to induce her as a vulnerable adult to purchase a vehicle from Ericksen and Carpenter, who were employed by HAI, Chrysler, CFA and Ford.   See Complaint, ¶ 120.   In particular, Hunter asserted that Ericksen, HAI, Chrysler, CFA and Ford authorized Carpenter to make false and misleading statements that Hunter could refinance the interest rate on her vehicle in six months to a substantially lower interest rate when their intent was to trap her at an interest rate of 22.25% for the life of the five-year loan. Id., ¶ 121.   Hunter also alleged that defendants violated Ford's Z Plan by concealing and refusing to sell a Ford Taurus from the inventory of another dealership based on her race, age and disability. Id.   Further, Hunter claimed that CFA knew or should have known that HAI and Ford were engaged in discriminatory lending based on race, age, gender and disability. Id.

Defendant Ford only challenged the §§ 17200 and 17208 claim. See Ford Mem. at p. 8. It did not move to dismiss the claims against it based on the Consumer Fraud Act or MHRA. Chrysler also focused on the §§ 17200 and 17208 claim in the body of its brief, however, in a footnote it did state that it was challenging the MHRA and Consumer Fraud Act claims on the same grounds it had submitted with respect to Hunter's Third and Fourth Causes of Action. See Chrysler Mem. at p. 9 n. 4.

### 1.    Unlawful Business Practices Under Business and Professions Code §§ 17200 and 17208

Both Ford and Chrysler argued that Hunter's claims under §§ 17200 and 17208 should be dismissed as they govern transactions occurring in California and are therefore not applicable to a transaction that occurred solely in Minnesota. See Ford Mem. at p. 8; Chrysler Mem. at pp. 9-10.   A review of the Complaint establishes that the

entire underlying transaction occurred in Minnesota and the agreements at issue make no reference to California law.  Failing to allege any facts which tie the transaction at issue with California, this Court finds that Ford and Chrysler's motion to dismiss her §§ 17200 and 17208 claims should be granted and that they be dismissed with prejudice. See Meridian Project Systems, Inc. v. Hardin Const. Co., LLC, 404 F. Supp.2d 1214, 1225 (E.D. Cal. 2005) (concluding that the California Business & Professions Code does not apply to events occurring outside of California).

### 2.   Consumer Fraud Act

For the reasons stated forth in Section III.D of this Order, supra, this Court finds that Ford and Chrysler's Motion to Dismiss should be granted as to Hunter's Consumer Fraud Act claims and that these claims against them be should dismissed with prejudice.

### 3.   Minnesota Human Rights Act Claims

The only possible applicable MHRA section relied upon by Hunter is Minn. Stat. § 363A.16, which provides:

> Personal or commercial credit. It is an unfair discriminatory practice to discriminate in the extension of personal or commercial credit to a person, or in the requirements for obtaining credit, because of race, color, creed, religion, disability, national origin, sex, sexual orientation, or marital status, or due to the receipt of federal, state, or local public assistance including medical assistance.

Hunter has alleged that she purchased a 2003 Ford Taurus, and that the alleged offending credit terms were extended to her by Ford, CFA and HAI.  As Chrysler played no role in the loan that Hunter ultimately received, she cannot state a cause of action against Chrysler based on Minn. Stat. § 363A.16.   Therefore, this Court finds that

Chrysler's Motion to Dismiss Hunter's MHRA claim pursuant to Minn. Stat. § 363A.16 should be granted and the claim dismissed with prejudice.

As to the other provisions cited by Hunter in support of her Fifth Cause of Action relating to the MHRA, the Court finds that they are either not actionable or do not apply to the facts alleged in her Complaint.  Section 363A.01 is the citation to the MHRA; § 363A.02 states the policy behind the MHRA; § 363A.04 pertains to the construction and exclusivity of the MHRA; § 363A.10 deals with the ability of a disabled person to occupy a dwelling; and § 363A.12 applies to discrimination and public services (i.e., bus service).  As such, this Court, sua sponte, finds that Ford and Chrysler's Motion to Dismiss should be granted as to these sections of the MHRA because Hunter's claims pursuant to the statutes fail to state a claim for relief.  These claims should be dismissed with prejudice.

### F.  Sixth Cause of Action: Truth in Lending Act, 15 U.S.C. § 1601, et seq.

With regards to her Truth in Lending Act ("TILA") claim, Hunter asserted that Carpenter and Ericksen, employed at HAI, CFA and Ford, originated and serviced private car loans and violated TILA and the accompanying regulations by failing to deliver accurate disclosures regarding the annual percentage rate, finance charges; and the amount financed.  See Complaint, ¶¶ 129, 132.

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a).   TILA requires creditors to disclose the amount being financed, any finance charge (including any

expressed as an "annual percentage rate"), and the sum of the amount financed and the finance charge.  See 15 U.S.C. § 1638(a).

Section 1602(f) of TILA defines a creditor as:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, <u>and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement</u>.

15 U.S.C. § 1602(f) (emphasis added).  Similarly, the applicable Regulation Z defines a creditor as: "[a] person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a down payment), <u>and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract</u>."  12 C.F.R. § 226.2(a)(17)(i) (emphasis added).

Hunter does not allege that her loan was originally payable on its face or by agreement to either Ford or Chrysler.  Indeed, the agreements at issue only mention CFA as the lienholder.  See Complaint, Exs. 6-11.  Moreover, Hunter has failed to even mention Chrysler's specific role in the TILA claim.  Having failed to allege sufficient facts to show that either Ford or Chrysler meet the TILA definition of a creditor, Ford and Chrysler's Motions to Dismiss as it pertains to Hunter's Sixth Cause of Action under TILA should be granted and the claim dismissed with prejudice.  See Cetto v. LaSalle Bank Nat. Ass'n, 518 F.3d 263, 273 (4th Cir. 2008) ("To be a 'creditor,' however, the person must also always fulfill the second prong of Regulation Z's definition (which

tracks exactly the statutory definition in the first sentence of 15 U.S.C. § 1602(f)) by being the one to whom the obligation is initially payable on the face of the loan document.").

## IV.  PLAINTIFF'S RULE 55 MOTIONS

### A.  <u>Plaintiff's Motion for Default of Judgment (Against defendants Hastings Automotive Inc, Dion Carpenter and Doug Ericksen) [Docket No. 22]</u>

Hunter argued that she is entitled to default judgment on the allegations stated in the Affidavit of Inez Hunter in Support of Civil Complaint [Docket No. 2] because HAI, Carpenter and Ericksen ("HAI Defendants") failed to respond to the these allegations in their joint Answer.  <u>See</u> Docket No. 22 at p. 2.  Hunter is not asserting that HAI Defendants failed to respond to portions of her Complaint.

HAI Defendants countered that they did not have to respond to the Affidavit as it was not part of Hunter's Complaint nor was it an Exhibit to the Complaint.  <u>See</u> Response of Defendant Hasting Automotive, Inc., Douglas Ericksen, and Dion Carpenter to Motion of Plaintiff for Default Judgment ("HAI Defendants' Response") at p. 2.  In addition, HAI Defendants argued that the general denial in paragraph one of the Complaint is sufficient, the assertions of fact in the Affidavit are almost verbatim recitations of portions from her Complaint, to which they have provided a response to in their Answer, and the Affidavit contained points of law that did not require a response. <u>Id.</u> at pp. 2-3.

The Federal Rules of Civil Procedure provide that default or default judgment may be entered against a party who "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise."  Fed.

R. Civ. P. 55(a).  A motion for default judgment must be preceded by an entry of default.  See Fed. R. Civ. P. 55(a) and (b).

Hunter's motion fails for several reasons.  First, no motion has been previously brought by Hunter to find any HAI Defendants in default, and no such judicial determination has been made.  Second, even if Hunter had properly stylized her motion as a motion to find HAI Defendants in default, there is nothing to indicate that they are not properly defending this case.  HAI Defendants filed an Answer to plaintiff's Complaint.

Third, as for the Affidavit, this Court finds that it is not a written instrument that is part of the Complaint for all purposes under Rule 10(c) of the Federal Rules of Civil Procedure.[7]  See Rose v. Bartle, 871 F.2d 331, 340 n. 3 (3d Cir.1989).  A "written instrument" evidences a legal obligation, such as contract or security agreement, but does not include an affidavit of a plaintiff's own supporting statements, such as they can be considered part of the pleadings.  See Murphy v. Cadillac Rubber & Plastics, Inc., 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996).  As such, defendants have no obligation to provide an Answer to Hunter's Affidavit.

In any event, the Court has examined Hunter's Affidavit and has determined that almost all of the paragraphs in the Affidavit are virtually verbatim recitations of

---

[7]   Likewise, this Court will not consider Hunter's "More Definite Statement" as part of her Complaint, which was a part of her Objection and Response to Chyrsler [sic] and Ford's Objection to Motion for Default of Judgment Objection to a More Definite Statement, Objection to Motion to Dismiss and a More Definite Statement.  See Docket No. 52.  This included a claim by Hunter that Chrysler and Ford were responsible for training Ericksen and Carpenter with regards to the Z Plan.  This statement is outside of the Complaint and cannot be considered by the Court in conjunction with Ford or Chrysler's motions to dismiss.

allegations contained in the Complaint, as set forth in the HAI Defendants' table responding to the motion for default judgment.  <u>See</u> HAI Defendants' Response at pp. 4-5.  The only paragraphs not addressed by HAI Defendants were first paragraph 4, which this Court finds is a verbatim recitation of portions of paragraphs 47 and 60 of the Complaint, and paragraph 25, which is subsumed in a portion of paragraph 121 of the Complaint.  The remaining paragraphs from Hunter's Affidavit, paragraphs 26-38, are statements of law and not allegations of fact, and therefore, do not require a response by the defendants.  <u>See</u> <u>Recker v. Jewel Food Stores, Inc.</u>, 2003 (NO. 03 C 995), 2003 WL 22071496 at *3 n. 2 (N.D. Ill. Sept. 03, 2003) ("As defendant notes in their answer to the complaint, paragraph 45 is a statement of law, not an allegation by the plaintiff, and it does not require a response by the defendant.").  Given that HAI Defendants have responded to the factual allegations at issue in the Affidavit as part of their Answer to the Complaint, this Court does not find that HAI Defendants failed "to plead or otherwise defend" as is required by Rule 55(a), and consequently, there is no reason to believe that HAI Defendants were abdicating their defense of this case.  The Court recommends that plaintiff's Motion for Default Judgment against the HAI Defendants be denied.

**B.**    **<u>Plaintiff's Motion for Default of Judgment Against Ford and Chrysler and More Definite Statement [Docket No. 38]</u>**

Hunter argued that she is entitled to default judgment against Ford and Chrysler because they failed to timely respond to her Summons and Complaint and because they failed to respond to her Affidavit in her Complaint with an affidavit of their own. <u>See</u> Declaration of Inez Hunter in Support of her Motion for Default of Judgment Against Ford and Chyrsler [sic] and More Definite [sic] Statement.  Ford and Chrysler responded

that their motions to dismiss were timely and there is no authority requiring them to respond to an initial pleading with sworn testimony.  <u>See</u> Defendant Chrysler, LLC's Response to Plaintiff's "Motion for Default Judgment Against Ford and Chrysler and More Definate [sic] Statement"; Ford Motor Company's Response to Plaintiff's Motion Default of Judgment Against Ford and Chrysler and More Definite [sic] Statement at pp. 1-2.

The Summons for the Complaint was issued on August 29, 2008.  Ford was served with the Summons and Complaint on September 17, 2008 and Chrysler was served with the Summons and Complaint on September 16, 2008.  <u>See</u> Docket No. 25. On October 6, 2008, Chrysler, in lieu of answering the Complaint, brought a Rule 12(b)(6) motion to dismiss the Complaint.  <u>See</u> Docket No. 15.  Likewise, Ford brought a Rule 12(b)(6) motion to dismiss on October 7, 2008.  <u>See</u> Docket No. 16.

Under Fed. R. Civ. P. 12(a)(1), a party must serve a "responsive pleading" . . . "within 20 days after being served with a summons and complaint, . . ."  A motion to dismiss under Rule 12(b)(6) for failure to state a claim may be filed in lieu of an answer. <u>See</u> Fed. R. Civ. 12(b).  Rule 12(b) provides that motions under this rule "must be made before pleading if a responsive pleading is allowed."  Given that Ford and Chrysler brought their motions to dismiss before any responsive pleading by them and well within the 20 days of the service of the Summons and Complaint upon them, this Court finds that their responses to Hunter's Complaint are timely.[8]  Ford and Chrysler have not

---

[8]      In addition, for the reasons stated forth above, <u>supra</u>, in the motion for default judgment against the HIA Defendants, Ford and Chrysler were not required to respond to Hunter's Affidavit with sworn testimony.  Further, Hunter provided no authority to support, nor can this Court find any, requiring a party responding to a complaint to

failed "to plead or otherwise defend" as is required by Rule 55(a), and consequently, there is no reason to believe that they abdicated their defense of this case.

For these reasons, Hunter's Motions for Default Judgment against Ford and Chrysler should be denied.

### C.   Plaintiff's Motion for Default Judgment Against CITI Financial Auto [Docket No. 63].

Hunter argued that she is entitled to default judgment on the allegations stated in the Affidavit of Inez Hunter in Support of Civil Complaint [Docket No. 2] because CFA failed to respond to these via an affidavit of its own.  CFA asked for and received an extension of time to file its answer until December 15, 2008.  See Docket Nos. 19, 35.  CFA ultimately field its Answer on December 15, 2008.  See Docket Nos. 60, 61.  This Court finds that CFA's Answer was timely.  In addition, for the reasons stated forth above, CFA was not required to provide a sworn response to Hunter's Affidavit.  As such, Hunter's Motion for Default Judgment against CFA should be denied.

### RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.     Defendant Chrysler, LLC' Motion to Dismiss [Docket No. 15] should be **GRANTED** in part and **DENIED** in part as follows:

   a.    Chrysler's Motion to Dismiss is **GRANTED** as to plaintiffs' First Cause of Action; Second Cause of Action; Fourth Cause of Action; Fifth Cause of Action; and Sixth Cause of Action.  All of these claims should be dismissed **with prejudice**, except for plaintiff's claims in her Fourth Cause of Action under Minn. Stat. § 325D.09 and Minn. Stat. § 325F.71, which should be dismissed **without prejudice**.

---

answer via an affidavit.  In any event, the facts that are at issue in the Affidavit are part of the Complaint that is the subject of the motions to dismiss.

        b.      Chrysler's Motion to Dismiss is **DENIED** as to plaintiffs' Third Cause of Action.

2.      Defendant Ford Motor Company's Motion to Dismiss and for a More Definite Statement [Docket No. 16] should be **GRANTED** in part and **DENIED** in part as follows:

        a.      Ford's Motion is **GRANTED** as to plaintiffs' Second Cause of Action; Fourth Cause of Action; Unlawful Business Practices claim under Business and Professions Code §§ 17200 and 17208, and claims under Minn. Stat. §§ 363A.01, 363A.02, 363A.04, 363A.10, 363A.12 and 325F.69, as set forth in plaintiff's Fifth Cause of Action; and Sixth Cause of Action.  All of these claims should be dismissed **with prejudice**, except for plaintiff's claims in her Fourth Cause of Action under Minn. Stat. § 325D.09 and Minn. Stat. § 325F.71, which should be dismissed **without prejudice**.

        b.      Ford's Motion is **DENIED** as to plaintiffs' First Cause of Action; Third Cause of Action; and claims under Minn. Stat. § 363A.16, as set forth in plaintiff's Fifth Cause of Action.

3.      Plaintiff's Motion for Default of Judgment (against defendants Hastings Automotive Inc, Dion Carpenter and Doug Ericksen) [Docket No. 22] should be **DENIED**.

4.      Plaintiff's Motion for Default of Judgment Against Ford and Chrysler and More Definite Statement [Docket No. 38] should be **DENIED**.

5.      Plaintiff's Motion for Default Judgment against CITI Financial Auto [Docket No. 63] should be **DENIED**.

Dated:     May 6, 2009

                                  *s/ Janie S. Mayeron*
                                  JANIE S. MAYERON
                                  United States Magistrate Judge

## **NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 25, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **May 25, 2009**.